UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SNMP RESEARCH, INC. and )
SNMP RESEARCH INTERNATIONAL, INC., )
)
      Plaintiffs, )
)
v. )  No.: 3:12-CV-117
)     (VARLAN/SHIRLEY)
AVAYA, INC., )
)
      Defendant. )

## MEMORANDUM OPINION

This matter is before the Court on defendant Avaya Inc.'s ("Avaya") Motion to
Dismiss or, in the Alternative, to Transfer [Doc. 16], in which Avaya moves the Court to
dismiss the case or transfer the case to the United States District Court for the District of
Delaware. Plaintiffs submitted a response in opposition to the motion [Doc. 25], to
which Avaya replied [Doc. 41]. Both parties submitted multiple exhibits and affidavits
along with the pleadings. For the reasons set forth herein, Avaya's motion [Doc. 16] will
be **GRANTED** to the extent that this case will be **TRANSFERRED** to the United States
District Court for the District of Delaware.

## I.    Facts

The dispute in this case arises from License Agreement LDR-C36E (the "License
Agreement"), effective March 14, 1995, and entered into by plaintiff SNMP Research
International ("SNMPRI") and Avaya concerning the use of certain software, the
copyrights for which are owned by SNMPRI. SNMPRI is a Tennessee corporation that

markets, licenses, and provides support for software developed by plaintiff SNMP Research ("SNMPR") [Doc. 25-8 ¶ 6]. SNMPR created the components for the software that were licensed to Avaya pursuant to the License Agreement [*Id.* ¶ 7].

SNMPRI holds copyrights to "collections and compilations of various files" that make up the software it licenses to various users [*Id.*]. SNMPR holds the copyrights to the underlying files themselves. Dr. Jeffrey Case is the founder, President, and Chief Technology Officer of SNMPR [*Id.* ¶ 1]. Mary Case, Dr. Case's wife, is the President and Chief Executive Officer of SNMPRI [*Id.* ¶ 6]. Both companies are headquartered on the Case's farm, although the two companies are operated "as distinct corporations, with no common officers, common directors, or common employees" [*Id.*]. Dr. Case consults with SNMPRI and works with the customers who license their products from SNMPRI [*Id.* ¶ 9]. Dr. Case is responsible for SNMPRI's license agreement and subsequent relationship with Avaya [Doc. 25-7 ¶ 12].

Prior to the dispute in this case, Avaya and SNMPRI became parties to another license agreement after Avaya purchased certain software from a third party, Nortel Networks [Doc. 17 at 2]. Avaya and SNMPRI attempted to negotiate terms for a new license agreement governing that software but failed to do so, at which time plaintiffs jointly filed an adversary proceeding against Avaya and others in *In re Nortel Networks, Inc.*, No. 09-10138, Adv. Proc. No 11-53454 (Bankr. D. Del. filed Nov. 3, 2011)), which is currently pending in the United States Bankruptcy Court for the District of Delaware ("the bankruptcy action").

2

On November 1, 2011, when SNMPRI informed Avaya that it was filing a complaint in the bankruptcy action, SNMPRI also alleged that Avaya had recently either underreported the royalties owed to SNMPRI under the License Agreement or had failed to report them altogether [Doc. 16-6 at 2]. Specifically, SNMPRI alleged that Avaya had not paid royalties since 2009, which constituted a breach of the License Agreement [*Id.* at 3]. Further, SNMPRI stated that it believed Avaya was using software for which it did not have a license at all and advised Avaya that "unauthorized use of SNMP software is a breach of the [License] Agreement" [*Id.*]. Pursuant to the License Agreement, Avaya was given 45 days to cure the alleged breach by meeting a list of demands set forth by SNMPRI [*Id.* at 3-4]. Avaya subsequently attempted to negotiate with SNMPRI and attended a meeting in December 2011 where SNMPRI and Avaya agreed to form a "standstill agreement" that would give the parties more time to discover how much Avaya actually owed SNMPRI through various means of forensic analysis and would prevent SNMPRI from terminating the License Agreement [Doc. 17 at 4].

On January 6, 2012, Ms. Case, as President of SNMPRI, and Dr. Case, as President of SNMPR, sent a draft standstill agreement to Avaya [Doc. 25-4]. Along with provisions for an audit of the software covered by the License Agreement, the draft contained various terms as to how SNMPRI would calculate the royalties owed and stated that plaintiffs would not pursue their rights against Avaya unless the negotiations broke down, at which time they could pursue their rights after providing notice to Avaya

[*Id.* at 2].   On January 26, 2012, Avaya responded with an electronically revised version of the standstill agreement [Doc. 25-5].

On February 1, 2012, counsel for plaintiffs sent a letter to Avaya notifying Avaya that SNMPRI was terminating the License Agreement [Doc. 16-7 at 2].   Nevertheless, negotiations as to the standstill agreement continued, and on February 8, 2012, plaintiffs sent another revision of the draft agreement [Doc. 25-6].   This draft added various terms unfavorable to Avaya, including that Avaya could not assert the statute of limitations as a defense to any claim brought by plaintiffs [*Id.* at 3].   The parties attempted further negotiations that ended on February 13, 2012 [Doc. 17 at 6].

The next day, Avaya filed suit against SNMPRI in the United States District Court for the District of Delaware, *Avaya, Inc. v. SNMP Research International, Inc.*, Case 1:12-cv-191-LPS (D. Del. filed Feb. 14, 2012) (the "Delaware action").   In its complaint, Avaya seeks declaratory relief that SNMPRI's notice of termination of the License Agreement was improper and thus invalid [Doc. 16-2 ¶ 46].   Avaya also seeks damages for SNMPRI's breach of the License Agreement by improperly terminating the agreement despite Avaya's efforts to negotiate with SNMPRI [*Id.* ¶ 51].   Finally, Avaya seeks damages for an alleged breach of the implied covenant of good faith and fair dealing because of the improper termination and the unreasonable demands made during the course of negotiations [*Id.* ¶¶ 61, 62].

In response to Avaya's complaint, SNMPRI, on March 9, 2012, filed two motions in the Delaware action.   SNMPRI filed a motion to dismiss or transfer based on either

4

lack of personal jurisdiction or improper venue [Doc. 16-8]. SNMPRI also filed a motion to dismiss for failure to state a claim upon which relief could be granted or, in the alternative, a motion to strike portions of the complaint [Doc. 16-9]. Both of these motions are currently pending in the Delaware action.

On the same day, plaintiffs filed the present action. In their complaint, plaintiffs allege several causes of action relating to the sixteen copyrights the two companies have in software used by Avaya [Doc. 1]. First, plaintiffs allege copyright infringement of the registered works covered by the License Agreement beginning February 1, 2012, the date plaintiffs terminated the License Agreement [*Id.* ¶ 31]. Second, as a separate act of copyright infringement, plaintiffs allege that Avaya distributed other software not covered by the License Agreement [*Id.* ¶ 40]. Finally, plaintiffs allege Avaya breached the License Agreement for non-payment of royalties, for not destroying the source code upon plaintiffs' termination of the License Agreement, and for breaking the seal on the source code package without the requisite payment [*Id.* ¶¶ 51, 58, 64].

## II.     Analysis

### A.     The Parties' Positions

In support of its motion, Avaya argues that plaintiffs' case should be dismissed or transferred to the District of Delaware under the "first-to-file" doctrine. Avaya submits that it filed its action before the present case was brought, that the two companies, SNMPRI and SNMPR, are substantially similar, and that the issues between the two

lawsuits are similar enough for the Court to exercise its discretion and apply the first-to-file doctrine.

In response, plaintiffs argue that the first-to-file doctrine is inapplicable in this case. Plaintiffs submit that SNMPR is not a party to the Delaware action and that SNMPRI and SNMPR are two distinct companies not similar enough to invoke the doctrine. Similarly, plaintiffs argue that the issues are not the same because the action before this Court concerns allegations of copyright infringement for software not covered by the License Agreement. Plaintiffs further argue that the Court should not apply the first-to-file doctrine because Avaya acted in bad faith by filing the Delaware action in anticipation of the present action.

### B. Standard

The first-to-file doctrine is "a well-established doctrine that encourages comity among federal courts of equal rank." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (citation and internal quotation marks omitted). "'The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should *generally* proceed to judgment.'" *Id.* (quoting *Zide Sport Shop of Ohio v. Ed Tobergte Assoc., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)). District courts use three factors to determine whether the first-to-file doctrine warrants the invocation of their discretion to transfer or otherwise dispose of a case: "(1) the chronology of the actions; (2) the similarity of the parties involved; and (3) the similarity of the issues at stake."

6

*NCR Corp. v. First Fin. Computer Serv., Inc.*, 492 F. Supp. 2d 864, 866 (S.D. Ohio 2007) (citing *Plating Res., Inc. v. UTI Corp.*, 47 F. Supp. 2d 899, 903-04 (N.D. Ohio 1999)). The parties and issues do not have to be identical but need only be substantially similar; the focus is "'whether the parties and issues substantially overlap.'" *Elite Physicians Serv., LLC v. Citicorp Credit Serv., Inc.*, No. 1:06-CV-86, 2007 WL 1100481, at *3 (E.D. Tenn. Apr. 11, 2007) (quoting *Fuller v. Abercrombie & Fitch, Inc.*, 370 F. Supp. 2d 686, 688 (E.D. Tenn. 2005)). However, "[d]istrict courts have the discretion to dispense with the first-to-file rule where equity so demands." *Zide Sport Shop*, 16 F. App'x at 437 (internal citations omitted). "Factors that weigh against enforcement of the first-to-file rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory suits, and forum shopping." *Id.*

After a court applies the first-to-file doctrine, the court has discretion as to the disposition of the second-filed action. The second-filed court "should only decide whether to transfer the duplicative suit, issue a stay, or dismiss the complaint." *Elite Physicians*, 2007 WL 1100481 at *4-5 (noting that "few courts" choose to dismiss a second-filed suit outright, usually doing so because of the inability to otherwise transfer the case); *see Fuller*, 370 F. Supp. 2d at 689 (noting the court has the discretion to stay the suit or transfer the second-filed action to the court of the first-filed action).

### C.    Application

Plaintiffs acknowledge that Avaya filed the Delaware action several weeks before Avaya filed the present action, but argue that the two actions do not involve the same

parties, as SNMPR is not named in the Delaware action and SNMPR is not a party to the License Agreement at issue in the Delaware action. In determining how similar the parties must be to apply the doctrine, "[c]ourts generally hold that privity or affiliation between/among [the parties] is sufficient to find 'substantial overlap.'" *Elite Physicians*, 2007 WL 1100481 at \*3 (citing *Hayse Lemmerz Int'l, Inc. v. Epilogics Grp.*, No. 03-CV-70181-DT, 2006 WL 2571987, at \*2 (E.D. Mich. Sept. 5, 2006)); *see Supervalu Inc. v. Exec. Dev. Sys.*, No. CV-06-329-S-BLW, 2007 WL 129039, at \*1 (D. Idaho Jan. 12, 2007) (noting that affiliation is sufficient under the doctrine).

Evidence presented to the Court demonstrates that SNMPR and SNMPRI are separate companies but have significant affiliations with one another. SNMPR develops software and copyrights the individual files, and SNMPRI then secures the copyrights on groups of those files. SNMPRI also markets and licenses the software developed by SNMPR. Even more, despite having separate officers and accounting records, the two companies are both located at the residence of Dr. and Ms. Case, and Ms. Case serves as president of SNMPRI while Dr. Case serves as president of SNMPR.

The record also establishes that Dr. Case, while serving as President of SNMPR, acted as a consultant and liaison between SNMPRI and its clients, including Avaya [Doc. 25-8 ¶ 9]. In his affidavit, Dr. Case admits to being "thoroughly familiar with all of the terms of the License Agreement as well as the terms of all amendments" and discusses SNMPRI's allegations of breach against Avaya in great detail, including the allegation that Avaya under-reported its distributions in calculating the royalties owed to SNMPRI

8

[*Id.* ¶¶ 10-12]. Dr. Case attended the December meeting on behalf of SNMPRI to negotiate with Avaya regarding the License Agreement [*Id.* ¶14]. *See Supervalu*, 2007 WL 129039 at *2 (noting that individual defendant's involvement in development of disputed programs licensed by another defendant was evidence of similarity of the parties). Finally, letters drafted in January and February 2012 attempting to resolve the dispute concerning the License Agreement show they were on behalf Ms. Case, as President of SNMPRI, as well as Dr. Case, as President of SNMPR [Doc. 25-4 at 3]. Accordingly, the Court finds that there is substantial overlap between the parties given the close affiliation between SNMPR and SNMPRI so as to weigh in favor of applying the first-to-file doctrine.

For similar reasons, the Court finds that the Delaware action and the present action involve substantially the same issues. At the center of both lawsuits is the License Agreement. The Delaware action concerns the termination of the License Agreement and whether SNMPRI improperly terminated that agreement. In the matter before this Court, one of the claims is whether Avaya infringed copyrights associated with software covered by the License Agreement beginning February 1, 2012, the "collection copyrights" owned by SNMPRI, and the individual file copyrights owned by SNMPR. If the Delaware court determines that SNMPRI's termination of the License Agreement was improper, then presumably Avaya could not have committed copyright infringement because the License Agreement was still in effect after February 1, 2012. Thus, the issues are interrelated. Relatedly, in its complaint in the Delaware action, Avaya alleges

9

that it met all of its material obligations under the License Agreement [Doc. 16-2 ¶¶ 50, 55].  Evidence of Avaya's breach would, accordingly, be part of SNMPRI's defense in the Delaware action to refute the claim it improperly terminated the agreement.

Moreover, both the breach of contract claim and the claim of copyright infringement for software not covered by the License Agreement in this case arise from the same transactions or occurrences as the claims in the Delaware action so that both claims could be brought as counterclaims under Rule 13(a) of the Federal Rules of Civil Procedure.  *See Sony/ATV Music Pub., LLC v. KTS Karaoke, Inc.*, No. 3-12-0089, 2012 WL 1267980, at *2 (M.D. Tenn. Apr. 16, 2012) (granting motion to transfer in copyright infringement action where there was a previously filed declaratory action and noting that "[d]efendants' declaratory judgment and unfair competition action and the allowable counterclaims, cross-claims and any third-party claims therein will determine the rights of the parties, settle the controversy at issue, and serve a useful purpose in clarifying the legal relations in issue") (citation omitted).  As previously discussed, plaintiffs' breach of contract allegations arose in November 2011 when counsel for SNMPRI sent notice to Avaya of SNMPRI's allegations that Avaya had breached the License Agreement [Doc. 16-6 at 3].  The same letter also states that "SNMPRI has reason to believe that Avaya is using SNMP Software in Avaya products for which Avaya does not have a license. Avaya's unauthorized use of SNMP Software is a breach of the Agreement" [*Id.*].  These allegations are in part what led Avaya to meet with plaintiffs in December 2012 and

prompted the negotiations at that meeting and the subsequent exchange of the draft standstill agreements.

In sum, the Delaware action concerns whether termination of the License Agreement was proper in light of Avaya's efforts at negotiating with SNMPRI, while the matter before this Court concerns the issues that prompted the series of negotiations, including the non-payment of royalties and the copyright infringement that occurred as a result of the termination of the License Agreement. The "central issue" in both cases, then, is the respective parties' compliance with the License Agreement. *See Sony/ATV Music* 2012 WL 1267980, at *2 (M.D. Tenn. Apr. 16, 2012) (noting that the central issue in both the declaratory action and copyright action was whether defendants infringed plaintiffs' copyrights). The Delaware action and "the allowable counterclaims, cross-claims, and any third-party claims therein will determine the rights of the parties, settle the controversy at issue, and serve a useful purpose in clarifying the legal relations in issue." *Id.* (citing *Plough, Inc. v. Allergan, Inc.*, 741 F. Supp. 144, 147 (W.D. Tenn. 1990)). Thus, the Court finds that "the differences between the two actions are not sufficient to overcome the substantial similarities," particularly in light of the similarity of the parties and the circumstances of this case. *Id.*

Plaintiffs cite to *Smith v. Securities Exchange Commission,* 129 F.3d 356 (6th Cir. 1997), for the proposition that the two actions are not similar. In that case a Tennessee district court issued an order enjoining the Securities Exchange Commission from prosecuting a civil enforcement action in California because the individual accused of

11

insider trading had previously filed a declaratory suit in Tennessee. In reversing the district court, the Sixth Circuit noted that the first-filed suit focused on a single issue, the suppression of a tape recording, which was a small part of a broader action in the second-filed suit for insider trading. The Sixth Circuit focused on the fact that the lower court's decision would ensure a piecemeal disposal of the suit, which was not in the interests of conserving judicial resources. *Id.* at 361. In this case, allowing plaintiffs' suit to go forward in this Court would similarly result in the piecemeal litigation of the dispute between the parties with the potential for inconsistent judgments in each action. Permitting the first-filed Delaware action to decide all of the issues between the parties thus conforms to the principles set forth in *Smith* and those underlying the first-to-file doctrine.

Plaintiffs separately assert that Avaya's Delaware action is an anticipatory suit and that Avaya acted in bad faith in filing that action. *See Sony/ATV Music*, 2012 WL 1267980 at *2 ("Circumstances where an exception to the rule will arise include cases of bad faith, anticipatory suits, and forum shopping."). An anticipatory suit is one in which the "plaintiff in the first action filed suit on receipt of specific, concrete indications that a suit by the Avaya was imminent." *Id.* "[A] letter which suggests the possibility of legal action" is not a specific, imminent threat of legal action for purposes of determining whether a suit is anticipatory. *Id.* "A party has the right to seek declaratory judgment where a reasonable apprehension exists that if it continues an activity, it will be sued by

12

another party." *Id.* (citing *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994)).

Plaintiffs informed Avaya in November 2011 that Avaya was in breach of the License Agreement and had 45 days to cure the breach [Doc. 16-6 at 3]. Although the letter states that "SNMP may exercise its rights under the Agreement," this declaration is not a concrete indication of imminent legal action. Plaintiffs and Avaya began negotiating the manner in which Avaya could cure any alleged breaches of the License Agreement in December 2011 and continued these negotiations through January 2012. In the first draft of the standstill agreement sent on January 6, 2012, plaintiffs give no indication of bringing suit; in fact the emphasis of the letter was "resolv[ing] the issues between" the two parties [Doc. 25-4 at 1]. Plaintiffs maintained this position in the subsequent revisions of the standstill agreement. *See Sony/ATV Music*, 2012 WL 1267980, at *3 (noting that settlement correspondence did not indicate an imminent lawsuit but indicated that plaintiffs wished to avoid litigation). On February 1, in the letter indicating that plaintiffs were terminating the License Agreement, there is again no indication of an imminent lawsuit, and no such indication is otherwise present in the record before the Court [Doc. 16-7 at 3]. The parties continued their negotiations even after the termination of the License Agreement, and Avaya did not file its suit until after negotiations had proved unsuccessful. *Cf. Zide Sports Shop*, 16 F. App'x at 438 (finding bad faith present where plaintiffs continued written correspondence regarding settlement when it had already filed but not served an anticipatory federal action). In sum, plaintiffs

13

have not presented evidence that Avaya's filing of the Delaware action was an act of bad faith or was anticipatory in a manner that would require the Court to disregard the first-to-file doctrine.

Having found that the first-to-file doctrine is appropriate in this case, the Court must determine how to dispose of the matter before it. *See Elite Physicians*, 2007 WL 1100481, at *4 ("[D]isposition of the second-filed action is within the court's discretion." (citation omitted)). In deciding whether to transfer, stay, or dismiss the suit, the second-filed court "often engages in an equitable balancing," *id.* at 5*,* and courts generally choose to transfer an action when dealing with substantive matters, *id.* (citing cases).

While the parties proceed to analyze whether transfer is appropriate under 28 U.S.C. § 1404(a)'s provisions for transferring venue, that "type of motion asks a court to transfer a proceeding for the convenience of the parties, whereas [the first-to-file doctrine] is a doctrine rooted in judicial comity." *NCR Corp.*, 492 F. Supp. 2d at 868. "Instead of convenience to the litigants, the value most cherished by the first-to-file doctrine is comity among the courts with cases containing substantially similar issues." *Id.* Thus, while the Court may take into account factors such as the convenience of the parties, the primary factor in deciding whether to transfer is the judiciary's interest in having the first-filed court determine all the dispositive issues in the case. *Elite Physicians*, 2007 WL 1100481, at *4 (citing *Zide Sport Shop*, 16 F. App'x at 437).

Plaintiffs' arguments center on the alleged bad faith of Avaya and that the Delaware action is otherwise inconvenient given the location of the plaintiffs and the

14

governing law under the License Agreement.  Plaintiffs, however, have not shown that Avaya negotiated in bad faith during the course of revisions of the proposed standstill agreement or that Avaya intended to file suit even while it was negotiating with plaintiffs. With regards to the inconvenience of litigating in Delaware, that argument is largely counterbalanced by the fact that plaintiffs initiated the Delaware bankruptcy action against Avaya and others and are represented by local counsel in Delaware.  Plaintiffs have not presented evidence indicating that adjudication of the action in Delaware presents a significant burden in light of plaintiffs' adjudication of the bankruptcy action. Nor have plaintiffs presented any evidence that a Delaware federal court could not adequately decide the case using Tennessee law.

To the extent transferring this action may present some inconvenience to the parties, such possibility is in any event substantially outweighed by the judiciary's interest in having the Delaware court determine all of the dispositive issues in the case, as the issues and parties here are substantially similar to the issues in the Delaware action. Judicial comity is better served by one court deciding the entire matter between the parties rather than several courts deciding the matter in piecemeal fashion.  *See Sony/ATV*, 2012 WL 1267980, at *3 ("In order to avoid duplication and in the interest of justice, this case should be transferred so the issues presented can be resolved in the earlier-filed action . . . .").

Accordingly, the Court finds that transferring this case to the District Court for the District of Delaware is appropriate under the first-to-file doctrine.

**III.    Conclusion**

For the reasons set forth herein, Avaya's motion [Doc. 16] will be **GRANTED** to the extent that this case will be **TRANSFERRED** in its entirety to the United States District Court for the District of Delaware.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE